WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Maria Olga Ward, | No. CV-12-00497-TUC-FRZ (BPV) |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security[1], | |
| Defendant. | |

Plaintiff, Maria Olga Ward, filed this action for review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g). After considering the record before the Court and the parties' briefing of the issues, the Court affirms Commissioner's decision.

### I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") on February 25, 2009, alleging an onset of disability beginning August 12, 2008 due to a fracture in her left hand that limited her ability to lift heavy items, and prevented her from holding or gripping anything with her left hand. (Transcript/Administrative Record ("Tr.") 125-26, 141, 146. The application was denied initially and on reconsideration. Tr. 100-105, 108-110. A hearing before an Administrative Law Judge ("ALJ") was held on February 22, 2011. Tr. 82-99. The ALJ issued a decision on April 5, 2011, finding Plaintiff not disabled within the meaning of the Social Security Act. Tr. 13-30. This decision became the Commissioner's final decision when the Appeals Council denied review. Tr. 1-6.

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. §

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and is hereby substituted for Michael J. Astrue as the defendant in this action, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

405(g). (Doc. 1) For reasons that follow, the Court finds the final decision of the Commissioner is supported by substantial evidence and is free from legal error.

**II.   THE RECORD ON APPEAL**

   A. Plaintiff's Background and Statements in the Record

Plaintiff was 50 years old at the time of the ALJ's decision with a high school education and two years of college in Mexico, but an inability to communicate fluently in English. Tr. 26, 86, 141, 151. Plaintiff has past relevant work as an in-home caregiver, which was heavy, unskilled work as the Plaintiff actually performed it. Tr. 25, 156.

Plaintiff completed a questionnaire in relation to her Social Security claims stating that she needs help bathing, dressing and with her shoes, and she cannot perform essential household duties. Tr. 171. Plaintiff testified at her hearing before the ALJ on February 22, 2011, through an interpreter, that she can't use her left hand to pick things up because things fall out of her hand, because it is "[w]eak, and it's painful." Tr. 90. In a typical day Plaintiff described watching television, taking her dog for a walk, making breakfast, sharing laundry duties, sometimes cleaning the house, showering and dressing, cooking evening meals, sometimes reading the papers, and using the computer to play games. Tr. 90-91. She had surgery on her hand, but stated it did not help. Tr. 91. She takes medications but they cause her to be tired and drowsy. Tr. 93-94. Plaintiff is right-hand dominant. Tr. 86.

Tracy Young, a vocational expert (VE), testified in response to a hypothetical question, that an individual with Plaintiff's age, education and work background, right-hand dominance, with gross and fine manipulation limitations occasionally in the non-dominant left hand, and five pound lift and carry restrictions in the left hand, could not perform Plaintiff's past relevant work as a caregiver or as a companion. Tr. 94-95.

Ms. Young testified that there were jobs classified by the Dictionary of Occupational Titles as sedentary, unskilled jobs that required only occasional handling, reaching and feeling that the hypothetical individual could perform, including document preparer or document specialist, and election clerk. Tr. 96-97. Ms. Young testified that

nationally there were 23,123 document specialist positions, and 14,535 election clerk positions, and in Arizona there were 456 document specialist positions and 287 election clerk positions. Tr. 97-98.

### B.  Medical Evidence Before the ALJ

#### 1)  Treating Providers

Plaintiff was examined and treated by Thomas W. Futch, M.D. (Tr. 195-96, 198-201); Brandon Massey, M.D. (192-93, 389, 392, 397, 403, 411, 415, 422-24, 440-41, 444, 446, 492-94) and Randall S. Prust, M.D. (Tr. 495-504).

Plaintiff sustained an injury to her left hand on August 11, 2008, when a towel dispenser fell on her hand and wrist during the course of her employment. Tr. 195-96. Dr. Futch, with Concentra Medical Centers (AZ), assessed Plaintiff with a hand and wrist contusion. Tr. 196. Plaintiff was prescribed Tylenol and cyclobenzaprine, and was given a brace to wear. Tr. 196.

Dr. Massey, with the Institute for Plastic Surgery and Peripheral Nerve Surgery, performed a carpometacarpal (CMC) joint arthroplasty on January 15, 2009. Tr. 440-41. Dr. Massey released Plaintiff to work part-time with limitations on February 27, 2008. Tr. 432. In April, 2009, Plaintiff continued to report a fairly significant amount of pain, which Dr. Massey attributed to the nonabsorbable sutures remaining in Plaintiff's hand after the CMC joint arthroplasty. Tr. 424. A second surgery, capsulotomy of the left thumb CMC joint and removal of prominent sutures was performed on May 7, 2009. Tr. 422-23. On June 19, 2009, Dr. Massey noted that the motion of the left thumb was significantly improved, and Plaintiff was reporting mild improvement. Tr. 415. Dr. Massey released Plaintiff to work with the following limitations: no repetitive use of the left hand, and no pushing, pulling or lifting more than five pounds with the left hand. Tr. 413. Dr. Massey imposed the same restrictions on July 17, 2009, and again on September 11, 24, and 25, 2009. Tr. 391 392, 396, 411. A third surgical procedure was recommended by Dr. Massey, Tr. 389, 492. Plaintiff never underwent this surgery.

Dr. Prust, with Rincon Pain Management, examined Plaintiff on July 6, 2010. Tr.

503-505. He indicated his examination was very similar to that of independent medical examiner's, Dr. Hayden's, *see infra*, Section B-2. Tr. 504. Dr. Prust believed Plaintiff's condition could be medically managed, and prescribed Plaintiff Neurontin (gabapentin), and tramadol. Tr. 504. On July 30, 2010, Dr. Prust noted that Plaintiff's medications were helping with the pain tremendously, indicating that she was about "50% better overall." Tr. 501. Dr. Prust recommended that she not have surgery. Tr. 495.

*2) Examining Physicians*

On December 29, 2009, John Hayden, M.D., reviewed Plaintiff's records and conducted an examination of Plaintiff in relation to her industrial injury claim. Tr. 461. Dr. Hayden opined that he would not recommend further left hand surgery, but would recommend pain management evaluation and treatment by a pain management specialist. Tr. 488. Dr. Hayden stated that Plaintiff was not capable of returning to her pre-injury work, but was capable of light duty work involving only the right hand. Tr. 489.

*3) Non-examining State Agency Physicians*

LA Woodard, D.O., reviewed Plaintiff's records and completed a Physical Residual Functional Capacity Assessment in November, 2009. Tr. 447. Dr. Woodard diagnosed status post left CMC joint arthroplasty and opined that Plaintiff could perform a wide range of light work, with the following limitations: occasionally lift 20 pounds, frequently lift 10 pounds; sit, stand, or walk 6 hours in an 8 hour day; no climbing of ladders, ropes or scaffolds; limited handling and fingering in the left upper extremity; and avoidance of concentrated exposure to hazards. Tr. 448-451.

*4) The ALJ's Findings*

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 12, 2008. Tr. 21, ¶ 2. The ALJ found that Plaintiff has the severe impairment of "status post [] left hand injury with residual pain and weakness." Tr. 21, ¶ 3. While these impairments do not meet or equal a listed impairment (Tr. 23, ¶ 4), they do preclude Plaintiff from performing her past relevant work as an in-home caregiver (Tr. 25, ¶ 6). At step five, the ALJ considered Plaintiff's RFC to perform

light work except that she cannot lift or carry more than 5 pounds with the left hand and she is limited to occasional gross and fine manipulation with the left hand, her age, education and her work experience in conjunction with the Medical-Vocational Guidelines, and testimony that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform and concluded that Plaintiff is not disabled. Tr. 23-27, ¶¶ 5, 9-11.

### III. DISCUSSION

#### A. Argument

Plaintiff contends that the ALJ erred by not directing a finding of disabled for a person closely approaching advanced age who cannot perform their past relevant work and has only sedentary unskilled positions available to them, contrary to 20 C.F.R. pt. 404, Subpt. P, App. 2, (hereinafter the "Medical-Vocational Guidelines" or the "grids"). (Doc. 19). The Commissioner contends that the ALJ: (1) properly found that Plaintiff could perform representative occupations, and that these positions existed in significant numbers in the national economy; and (2) reasonably set forth a Step Five analysis based upon Medical-Vocational Rule 202.14 (pertaining to light exertion) as a framework for the making of his decision. (Doc. 22). The Court finds that substantial evidence in the record supports the ALJ's decision that Plaintiff was capable of light work with limitations; rejects Plaintiff's argument that the Medical-Vocational Guidelines directs a finding of disability; and finds substantial evidence in the record in the form of the VE's testimony establishes that Plaintiff could perform work that exists in significant numbers in the national economy to support a finding of disability.

#### B. Standard of Review

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's decision to deny benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d

1194, 1198 (9th Cir. 2008). In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id*.

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) she has not worked since the alleged disability onset date, (2) she has a severe impairment, and (3) her impairment meets or equals a listed impairment or (4) her residual functional capacity (RFC) precludes her from performing her past work. At step five, the Commissioner must show that the claimant is able to perform other work. *See* 20 C.F.R. §§ 416.920(a)-(g).

C. <u>Analysis</u>

The burden rests on the Commissioner at the fifth step of the analysis to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). "An individual shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id*. In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical-Vocational Guidelines promulgated by the SSA. *See* 20 C.F.R. Pt. 404, Subpt. P, App.2, §200.00; *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576-577 (9th Cir. 1988). The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. 20 C.F.R. pt. 404, Subpt. P, App. 2, Rule 200.00. The grids calculate whether or not the claimant is disabled based on the claimant's exertional ability, age, education, and work experience. *Id.* The grids are a valid basis for denying claims where they completely and accurately

describe the claimant's abilities and limitations. *Tackett v. Apfel,* 180 F.3d 1094, 1101-02 (9th Cir. 1999). If the claimant has only exertional limitations, the claim may be resolved based only on the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006).

If the claimant has significant nonexertional limitations, the grids do not apply. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir. 1993). If significant nonexertional limitations prevent the claimant from performing the full range of work in any exertional category, the ALJ must take the testimony of a VE to deny the claim. *Burkhart v. Bowen*, 856 F.2d 1335, 1341 (9th Cir. 1988). If the claimant has both exertional and nonexertional limitations, the ALJ must consult the grids first before considering the testimony of a VE at step five. *Lounsburry*, 468 F.3d at 1115. If the grids direct a finding of disability, that finding must be adopted by the Commissioner. *Lounsburry,* 468 F.3d at 1116.

If not, the ALJ must use the grids as a framework for consideration of how much the nonexertional limitations limit the range of work permitted by the exertional limitations. *Tackett*, 180 F.3d at 1102. A nonexertional impairment, if significant, may limit the claimant's functional capacity in ways not contemplated by the Guidelines. *Id*. In such instances, the ALJ may not rely on the grids alone for the availability of jobs, but must obtain the testimony of a VE. *Id*.; *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002); *Moore v. Apfel*, 216 F.3d 864, 869-71 (9th Cir. 2000).

The ALJ may meet his burden at step five by asking a VE a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir.2009); *Thomas,* 278 F.3d at 956; *Desrosiers*, 846 F.2d at 578 (Pregerson, J., concurring) ("The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record."). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (internal quotation marks and citation omitted).

Plaintiff argues that the ALJ erred because the Medical-Vocational Guidelines direct a finding for a claimant, like Plaintiff, who is closely approaching advanced age, who cannot perform their past relevant work, and has only sedentary unskilled positions available to them. (Doc. 19, at 5). Plaintiff further argues that the ALJ's own residual functional capacity "does not allow for past work or anything but unskilled, sedentary work … ." (*Id.*). Plaintiff also asserts that there "must be light jobs available for the ALJ to deny the claim of [Plaintiff]." *(Id.).* The Court finds that substantial evidence in the record supports the ALJ's decision that Plaintiff was capable of light work with limitations; rejects Plaintiff's argument that the Medical-Vocational Guidelines directs a finding of disability; and finds that substantial evidence in the record in the form of the VE's testimony establishes that Plaintiff could perform work that exists in significant numbers in the national economy to support a finding of disability.

### 1) Residual Functional Capacity Determination

The ALJ found Plaintiff had the residual functional capacity to perform light work[2] with the exception of not lifting more than five pounds with the left hand, and limitations of occasional gross and fine manipulation with the left hand. Plaintiff does not assert that the ALJ erred in the RFC assessment through any error in weighing of medical source statements or credibility determinations. The Court has reviewed the medical evidence of record and finds that the ALJ's RFC assessment is supported by substantial

---

[2] Light work is defined in the regulations as:

[L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

evidence and free of legal error.

### 2) Medical-Vocational Guidelines

The Medical-Vocational Guidelines are a matrix system for handling claims that involve substantially uniform levels of impairment. *See* 20 C.F.R. Part 404, Subpt. P, App. 2. These guidelines are commonly known as the "grids" that give a finding of disabled or not disabled for various combinations of age, education, and work experience. The grids provide a uniform conclusion about the availability of jobs for all persons whose medical condition is categorized in the same way. *See id.*

The grids categorize jobs by their physical-exertional requirements and consist of three separate tables, one table for each category (sedentary work, light work, and medium work). *See* 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00. Each grid presents various combinations of factors relevant to a claimant's ability to find work. The factors in the grids are the claimant's age, education, and work experience. For each combination of these factors, *e.g.*, fifty years old, limited education, and unskilled work experience, the grids direct a finding of either disabled or not disabled based on the number of jobs in the national economy in that category of physical-exertional requirements. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00.

The grids, however, may be used only where they "completely and accurately represent a claimant's limitations." *Tackett*, 180 F.3d at 1101; *see Lounsburry*, 468 F.3d at 1115 (quoting *Tackett*, 180 F.3d at 1103); *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985). Accordingly, if a claimant suffers from nonexertional limitations, the ALJ may not apply the grids because they are based on strength factors only. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(e); *see also* 20 C.F.R. § 404.1569a; (defining nonexertional limitations as limitations that do not directly affect a claimant's [muscular] strength). "Application of the grids is not discretionary" where the claimant suffers only exertional limitations. *Lounsburry*, 468 F.3d at 1115. If the person "is 'disabled' under the grids, there is no need to examine the effect of the nonexertional limitations. But if the same person is not disabled under the grids, the nonexertional limitations must be examined

separately." *Id*. at 1116. *See also Desrosiers,* 846 F.2d at 576-77 (noting that a sufficiently severe, nonexertional impairment may limit a claimant's functional capacity in ways not contemplated by the guidelines, rendering the guidelines inapplicable and noting that pain or environmental limitations are examples of nonexertional limitations).

The ALJ did not err in applying the Medical-Vocational Guidelines as a framework for the making of his decision. The ALJ made specific reference to the Guidelines and made the appropriate findings regarding RFC, age, education, and work experience. Tr. 26 ("In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guideline ... ."). He also observed that, when a claimant has nonexertional limitations, "the medical-vocational rules are used as a framework for decision making," referring to SSRs 83-12 and 83-14. *Id*. Then, because of Claimant's nonexertional limitations, he relied on the VE's testimony to determine how much those limitations eroded the light occupational base for Claimant. Tr. 26. The ALJ was guided by the VE's testimony on whether a significant number of jobs exist for Claimant in the national economy. The ALJ's decision-making framework is entirely in accord with Ninth Circuit case law, as set forth in *Moore* and *Thomas, supra*.

### 3)  Vocational Expert Testimony

When a claimant's ability to perform a full range of a particular category of work is limited, the ALJ may use the services of a VE. 20 C.F.R. § 404.1566(3). The ALJ may meet his burden under step five by propounding to a VE a hypothetical that is based on medical assumptions supported by substantial evidence in the record and that reflects all the claimant's limitations. *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989); *see Valentine*, 574 F.3d at 690 (a hypothetical that fails to take into account a claimant's limitations is defective); *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228-29 (9th Cir. 2009); *Widmark v. Barnhart*, 454 F.3d 1063, 1069-70 (9th Cir. 2006). The ALJ's depiction of the claimant's

impairments must be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. An ALJ posing a hypothetical question to a VE "must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas,* 278 F.3d at 956 (quoting *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)); *see Valentine*, 574 F.3d at 690; *Magallanes*, 881 F.2d at 756. It is, however, proper for an ALJ to limit a hypothetical to only those restrictions that are supported by substantial evidence in the record. *See Magallanes*, 881 F.2d at 756-57.

By responding to hypothetical questions, the VE testifies as to: (1) what jobs the claimant would be able to perform; and (2) the availability of such jobs in the national economy. *See Tackett*, 180 F.3d at 1101. If there are significant numbers of jobs either in the region where the claimant lives or in several other regions of the country, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1566; *see also Burkhart*, 856 F.2d at 1340 (holding that the VE must identify specific jobs within the claimant's capabilities).

Plaintiff argues that the ALJ erred by not directing a finding of disabled for a person closely approaching advanced age who cannot perform their past relevant work and only has sedentary unskilled positions available to them, contrary to 20 C.F.R. pt. 404, Subpt P, app. II. (Doc. 19). Plaintiff's argument seems to be that, because the lift and carry, and manipulation limitations in Plaintiff's non-dominant hand in the RFC reduced the light category occupations to roughly the same level as are available for sedentary work, she should have been disabled under the grids. The Court disagrees.

First, the Court finds that there is no evidence to support Plaintiff's assumption that, because the VE found representative occupations that Plaintiff could perform that were categorized as sedentary work, that Plaintiff only had the RFC to perform sedentary work. The grids direct that if someone can do light work, they can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. *See*, 20 C.F.R. pt. 404, Subpart P, appendix II, 202.00.

Second, Plaintiff does not argue that it was error to rely on the VE's expert testimony in the first instance. The ALJ could not have made a determination before

relying upon the VE's testimony that Plaintiff's nonexertional limitations reduced the light category occupations to the same level as are available for sedentary work; at the same time, it was the VE's testimony that established that Plaintiff could perform work that exists in significant numbers in the national economy to support a finding of disability.

The Ninth Circuit addressed a similar situation in *Moore,* 216 F.3d at 870. The Court considered the situation when the exact place a claimant falls on the grids is difficult to determine because a claimant also suffers from nonexertional limitations, placing a claimant between two places on the grid, and referring to the Commissioner's policy, as well as SSR 83-12[3], found the consultation of a VE appropriate. *Id.* at 870.; *See e.g.*, *Watts v. Astrue*, 2010 WL 1854075, *7 (C.D. Cal 2010)(ALJ not required to return to grids or apply the grids where the vocational testimony indicates that jobs exist in the national economy despite a limitation that reduces the light occupation category to

---

[3] SSR 83–12 states, in pertinent part:

2. If the exertional level falls between two rules which direct opposite conclusions, i.e. "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:

> a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>
> b. On the other hand, if the exertional capability is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."
>
> c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining vocational base to support a conclusion as to disability. Accordingly, [VE] assistance is advisable for these types of cases.

roughly the same level as are available for sedentary work).

Thus, the ALJ in this case did exactly what the caselaw and SSR 83–12 direct him to do—he consulted a VE. The VE testified that a person with Plaintiff's profile could perform substantial gainful work in the economy[4], and accordingly the ALJ found that Plaintiff was not disabled. 42 U.S.C. § 423(d)(2)(A). Moreover, even assuming that the evidence rationally supports Plaintiff's argument, it also clearly supports the ALJ's decision to use a VE, and his subsequent ruling. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). The ALJ's finding that Plaintiff was not disabled because substantial gainful work exists in the national economy was supported by substantial evidence.

The court finds the final decision of the Commissioner is supported by substantial evidence and is free from legal error. Accordingly,

IT IS ORDERED:

1. The Commissioner's decision denying benefits is affirmed.

2. The Clerk of the Court is instructed to enter judgment accordingly and close this case.

Dated this 15th day of August, 2013.

Frank R. Zapata
Senior United States District Judge

---

[4] The VE testified that Plaintiff could perform representative jobs totaling 37,658 positions nationally, or 743 positions locally. The Court finds this is a significant number of positions to support a finding of disability. *See Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (2,300 local and 64,000 national jobs substantial evidence supporting denial of benefits); *Barker v. Secretary of Health and Human Serv.*, 882 F.2d 1474, 1478–79 (9th Cir.1989) (1,266 jobs significant gainful work).